[Cite as *State ex rel. Pottinger v. Cleveland Mun. Court*, 2026-Ohio-2414.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE EX REL. DRU POTTINGER, :

    Relator, : No. 115978

    v. :

THE CLEVELAND MUNICIPAL :
COURT, ET AL.,

     :

    Respondents.

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** WRIT DENIED
**DATED:** June 23, 2026

---

Writ of Prohibition
Motion No. 591889
Order No. 596303

---

### *Appearances:*

Dru Pottinger, *pro se.*

Mark D. Griffin, City of Cleveland Director of Law, James R. Russell, Jr., Chief Assistant Director of Law, and Gilbert E. Blomgren, Assistant Director or Law, *for respondent.*

DEENA R. CALABRESE, P.J.:

{¶ 1} On December 29, 2025, the relator, Dru Pottinger, commenced this prohibition action against the respondents, the Cleveland Municipal Court, Judge Michelle Early, and the Cleveland Animal Protective League, to prohibit them from

exercising any jurisdiction over the animals involved in the underlying case, *Cleveland v. Pottinger,* Cleveland M.C. No. 2025-APL-011059, including enforcing or imposing any care bond or custody determination. The instant controversy concerns the relator's dogs that were seized on allegations of neglect and abuse. The relator argues that his subsequent indictment in *State v. Pottinger,* Cuyahoga C.P. No. CR-25-705582-A, transferred jurisdiction of the controversy exclusively to the common pleas court and deprived the respondents of jurisdiction.

{¶ 2} On January 28, 2026, the respondent judge moved to dismiss on the grounds that the respondent judge had basic statutory authority and sufficient jurisdiction to determine the court's jurisdiction and that relator has or had an adequate remedy at law through appeal of the care order. On January 29, 2026, the Animal Protective League moved to dismiss on the grounds that the relator is really seeking a declaratory judgment and a prohibitory injunction and that the Animal Protective League is not about to exercise judicial authority. The relator filed briefs in opposition to both motions on February 5, 2026.

{¶ 3} After reviewing these initial filings, this court on April 1, 2026, directed the parties to submit evidence and briefs on the status and jurisdiction of the underlying cases. This court specifically asked the parties to address whether R.C. 959.132 vests continuing jurisdiction with the municipal court over the animals, whether the respondent judge could issue an order in a nollied case, and whether the common pleas criminal case divested the municipal court of jurisdiction over the animals. The respondents filed a joint supplemental brief on April 13,

2026. The relator filed his brief on April 14, 2026, with a filing of exhibits on April 17. Neither side chose to file reply briefs.

{¶ 4} This court has reviewed all of the filings, and this matter is ripe for resolution. For the following reasons, this court denies the application for a writ of prohibition.

**FACTUAL AND PROCEDURAL BACKGROUND**

{¶ 5} As gleaned from the filings, on September 10, 2025, the Cleveland Division of Animal Control impounded a dog tethered on a heavy chain with a "choke" collar in the relator's yard. It appeared that the dog did not have food, shelter, or water available. The Cleveland Division of Animal Control transferred the dog to the Animal Protective League ("the APL"), which filed a notice of seizure pursuant to R.C. 959.132 and a complaint on September 15, 2025.[1] *Cleveland v. Pottinger*, Cleveland M.C. No. 2025-APL-008605. The docket shows that there was a judicial review conducted on October 7, 2025, but no action was taken.

{¶ 6} By September 2025, the APL had already initiated an investigation into the relator's treatment of his animals. As a result, on September 17, 2025, the APL executed a search warrant at relator's property and seized seven additional dogs that appeared to be suffering from cruelty and neglect. Thus, on September 15, 2025, another case was filed, *Cleveland v. Pottinger,* Cleveland M.C. No. 2025-APL-

---

[1] Although the parties submitted select filings from the underlying cases, none of the parties submitted any of the initial complaints. Nor do the complaints seem to be available through the Cleveland Municipal Court website.

009103. The relator alleges that the trial court judge, Sydney Strickland Saffold, declined to find probable cause but ordered the relator to fix and cure all defects voiced by the APL.

{¶ 7} The grand jury indicted Pottinger on October 6, 2025, for 33 counts of cruelty against a companion animal concerning eight different dogs. The indictment also included charges of attempted burglary, obstructing official business, having weapons while under disability, and assault. *State v. Pottinger,* Cuyahoga C.P. No. CR-25-705582-A.[2] The next day, Cleveland M.C. No. 009103 was nollied.

{¶ 8} The respondents state that Case No. 009103 was refiled on December 2, 2025, in the municipal court as, *Cleveland v. Pottinger,* Cleveland M.C. No. 2025-APL-011059. The respondent judge conducted a hearing in this case on December 16, 2025. In a two-page December 23, 2025 journal entry, the respondent judge found probable cause to believe that the seven dogs impounded on September 17, 2025, were subjects of violations of R.C. Ch. 959. The respondent judge further found that $450 per month per animal was reasonably needed for the care of the dogs and ordered that the sum be paid by December 31, 2025, or the dogs would be subject to forfeiture to the APL. The first page of this order is a standard Cleveland Municipal Court "check-off the box" form with a few lines for specific orders. The caption of the order states it is in Case No. 011059. The judge wrote

---

[2] Trial in this case was scheduled for June 15, 2026.

"See attached JE; $1000 to be paid by 12/31/25; remaining balance due $11,600 due by 1/15/26 or dogs will be forfeited." The second page makes the probable-cause finding and sets the amount of $450 per month per animal. However, this order bears case no. 2025-APL-009103. The respondents maintain that the reference to Case No. 009103 was a clerical error that does not alter the fact the order was made in Case No. 011059. A review of the dockets of the two cases shows that a journal entry was entered in Case No. 011059 on December 23, 2025, and that there are no entries in Case No. 009103 after October 7, 2025.

{¶ 9} The relator admits that he has been unable to pay the maintenance fee and that the dogs have been forfeited.

**LEGAL ANALYSIS**

{¶ 10} The relator argues that when the grand jury indicted him in the common pleas case and case No. 009103 was nollied the priority of jurisdiction principle vested complete jurisdiction in the common pleas court and divested the municipal court of jurisdiction over the entire controversy. Thus, the municipal court was patently and unambiguously without jurisdiction to issue further orders, and a writ of prohibition should issue.

{¶ 11} The principles governing prohibition are well established. Its requisites are (1) the respondent against whom it is sought is about to exercise judicial power, (2) the exercise of such power is unauthorized by law, and (3) there is no adequate remedy at law. *State ex rel. Largent v. Fisher*, 43 Ohio St.3d 160, (1989). Relators must prove entitlement to the writ by clear and convincing

evidence.  *State ex rel. Javitch Block, L.L.C., v. Wollscheid,* 2026-Ohio 1932, ¶ 13.

Prohibition will not lie unless it clearly appears that the court has no jurisdiction of the cause that it is attempting to adjudicate or the court is about to exceed its jurisdiction.  *State ex rel. Ellis v. McCabe*, 138 Ohio St. 417 (1941), paragraph three of the syllabus.  "The writ will not issue to prevent an erroneous judgment, or to serve the purpose of appeal, or to correct mistakes of the lower court in deciding questions within its jurisdiction."  *State ex rel. Sparto v. Juvenile Court of Darke Cty.,* 153 Ohio St. 64, 65 (1950).  Furthermore, it should be used with great caution and not issue in a doubtful case.  *State ex rel. Merion v. Tuscarawas Cty. Court of Common Pleas*, 137 Ohio St. 273 (1940); and *Reiss v. Columbus Mun. Court*, 76 Ohio Law Abs. 141 (2d Dist. 1956).  Nevertheless, when a court is patently and unambiguously without jurisdiction to act whatsoever, the availability or adequacy of a remedy is immaterial to the issuance of a writ of prohibition.  *State ex rel. Tilford v. Crush*, 39 Ohio St.3d 174 (1988); and *State ex rel. Csank v. Jaffe*, 107 Ohio App.3d 387 (8th Dist. 1995).  However, absent such a patent and unambiguous lack of jurisdiction, a court having general jurisdiction of the subject matter of an action has authority to determine its own jurisdiction.  A party challenging the court's jurisdiction has an adequate remedy at law via an appeal from the court's holding that it has jurisdiction.  *State ex rel. Rootstown Local School Dist. Bd. of Edn. v. Portage Cty. Court of Common Pleas*, 78 Ohio St.3d 489 (1997). Moreover, this court has discretion in issuing the writ of prohibition. *State ex rel. Gilligan v. Hoddinott*, 36 Ohio St.2d 127 (1973).

**JURISDICTIONAL-PRIORITY RULE**

{¶ 12} Similarly, the principles of the jurisdictional-priority rule are also well established. This rule provides that "[a]s between [state] courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all tribunals, to adjudicate upon the whole issue and to settle the rights of the parties." *State ex rel. Dannaher v. Crawford,* 78 Ohio St.3d 391, 393 (1997); quoting *State ex rel. Racing Guild of Ohio v. Morgan,* 17 Ohio St.3d 54, 56 (1985); and *State ex rel. Phillips v. Polcar,* 50 Ohio St.2d 279 (1977), syllabus. Furthermore, "it is a condition of the operation of the state jurisdictional-priority rule that the claims or causes of action be the same in both cases, and '[i]f the second case is not for the same cause of action, nor between the same parties, the former suit will not prevent the latter.'" *Crawford* at 393, quoting *State ex rel. Sellers v. Gerkin,* 72 Ohio St.3d 115, 117 (1995), and *State ex rel. Judson v. Spahr,* 33 Ohio St.3d 111, 113 (1987). If the jurisdictional-priority rule applies, the respondent judge patently and unambiguously lacks jurisdiction. *State ex rel. Maron v. Corrigan,* 2023-Ohio-2556, ¶ 9.

{¶ 13} Nonetheless, the rule may apply even if the causes of action and requested relief are not identical. *Sellers* and *State ex rel. Otten v. Henderson,* 2011-Ohio-4082. That is, if the claims in both cases are such that each of the actions comprise part of the "whole issue" that is within the exclusive jurisdiction of the court whose power is legally first invoked, the jurisdictional-priority rule may be applicable. The determination of whether the two cases involve the "whole issue" or

matter requires a two-step analysis; "First, there must be cases pending in two different courts of concurrent jurisdiction involving substantially the same parties. Second, the ruling of the court subsequently acquiring jurisdiction may affect or interfere with the resolution of the issues before the court where suit was originally commenced." *Michaels Bldg. Co. v. Cardinal Fed. S. & L. Bank,* 54 Ohio App.3d 180, 182 (8th Dist. 1988); *Tri State Group v. Metcalf & Eddy of Ohio, Inc.,* 2009-Ohio-3902 (8th Dist.).

{¶ 14} In the present case, the jurisdictional-priority rule does not apply because the case in common pleas court is a criminal action and the cases in Cleveland Municipal Court are special statutory civil attachment and forfeiture proceedings. R.C. 959.132, impounding and disposition of companion animal, provides in relevant part as follows:

> (B)An officer may seize and cause to be impounded at an impounding agency an animal that the officer has probable cause to believe is the subject of an offense. . . .
>
> (C) The officer shall give written notice of the seizure and impoundment to the owner, keeper, or harborer of the animal not later than twenty-four hours after the animal was seized and impounded. . . . The notice shall include a statement that a hearing will be held not later than ten days after the notice is provided or at the next available court date to determine whether the officer had probable cause to seize the animal and, if applicable, to determine the amount of a bond or cash deposit that is needed to provide for the animal's care and keeping for not less than thirty days beginning on the date on which the animal was impounded.
>
> . . .
>
> (E)

(1) Not later than ten days after notice is provided or at the next available court date, the court shall hold a hearing to determine whether the officer impounding an animal had probable cause to seize the animal. If the court determines that probable cause exists, the court shall determine the amount of a bond or cash deposit that is necessary and reasonable to provide for the animal's care and keeping for not less than thirty days beginning on the date on which the animal was impounded.

(2) If the court determines that probable cause does not exist, the court immediately shall order the impounding agency to return the animal to its owner if possible. If the animal cannot be returned because it has died as a result of neglect or other misconduct by the impounding agency or if the animal is injured as a result of neglect or other misconduct by the impounding agency, the court shall order the impounding agency to pay the owner an amount determined by the court to be equal to the reasonable market value of the animal at the time that it was impounded plus statutory interest as defined in section 1343.03 of the Revised Code from the date of the impoundment or an amount determined by the court to be equal to the reasonable cost of treatment of the injury to the animal, as applicable. . . .

(3) If the court determines that probable cause exists and determines the amount of a bond or cash deposit, the case shall continue and the owner shall post a bond or cash deposit to provide for the animal's care and keeping for not less than thirty days beginning on the date on which the animal was impounded. The owner may renew a bond or cash deposit by posting, not later than ten days following the expiration of the period for which a previous bond or cash deposit was posted, a new bond or cash deposit in an amount that the court, in consultation with the impounding agency, determines is necessary and reasonable to provide for the animal's care and keeping for not less than thirty days beginning on the date on which the previous period expired. If no bond or cash deposit is posted or if a bond or cash deposit expires and is not renewed, the impounding agency may determine the disposition of the animal unless the court issues an order that specifies otherwise.

(F) If a person is convicted of committing an offense, the court may impose the following additional penalties against the person:

(1) A requirement that the person pay for the costs incurred by the impounding agency in caring for an animal involved in the applicable offense, provided that the costs were incurred during the animal's

impoundment. A bond or cash deposit posted under this section may be applied to the costs.

(2) An order permanently terminating the person's right to possession, title, custody, or care of the animal that was involved in the offense. If the court issues such an order, the court shall order the disposition of the animal.

(G) If a person is found not guilty of committing an offense, the court immediately shall order the impounding agency to return the animal to its owner if possible and to return the entire amount of any bond or cash deposit posted under division (E) of this section. . . .

{¶ 15} *In re Hirt,* 2026-Ohio-681 (6th Dist.), is instructive. Hirt was a veterinarian who kept 110 animals on her property. On February 21, 2025, the grand jury indicted Hirt in Sandusky County Common Pleas Court on five fifth-degree felony counts of cruelty to companion animals. Three days later, additional animals were seized from Hirt's property, and a R.C. 959.132 hearing was scheduled in Sandusky County Court. The county court determined that there was probable cause to seize the animals and set the maintenance bond at $281,168.00 for sixty days. Hirt subsequently pled guilty to charges in the common pleas court.

{¶ 16} In reviewing the propriety of the R.C. 959.132 hearing, the Sixth District clarified that the hearing is a special civil statutory proceeding first to determine probable cause and then to set a maintenance bond. This bond is not meant to punish the pet owner but to preserve the pets while other proceedings are being conducted. If the pet owner is unable to pay the bond, the animals are subject to forfeiture. The Supreme Court of Ohio has held that forfeiture proceedings are civil in nature. *State v. Casalicchio,* 58 Ohio St.3d 178, 181 (1991). The Second Appellate District recognized that a criminal proceeding and a forfeiture proceeding

are separate and distinct events; the forfeiture action is a civil proceeding. *In re Forfeiture of Property of Rhodes,* 2013-Ohio-3046, ¶ 11 (2d Dist.). Therefore, because the two proceedings are different, one criminal, the other civil, the jurisdictional-priority rule does not apply.

**TERMINATION OF JURISDICTION**

{¶ 17} The respondent judge found probable cause and set the amount of the bond in a journal entry bearing the case number 2025-APL-009103 after that case had been nollied. Generally, when a trial court dismisses a case, it patently and unambiguously lacks jurisdiction to proceed. *State ex rel. Fifth Third Mtge. Co. v. Russo,* 2011-Ohio-3177, ¶ 12; *State ex rel. Rice v. McGrath,* 62 Ohio St.3d 70 (1991). However, a careful review of the entry and the municipal court dockets reflects that the probable cause and bond entry was actually issued in Case No. 2025-APL-011059. The anomalous entry was the second page of an entry in 011059, which is listed on the docket of 011059. There is no docket entry in 009103. Under these facts, to find that the anomalous entry was issued without jurisdiction because of a clerical error would be to elevate form over substance. *Chase Manhattan Mtge. Corp. v. Locker,* 2003-Ohio-6665 (2d Dist.); *JPMorgan Chase Bank v. Ritchey,* 2007-Ohio-4225 (11th Dist.) (Scrivener's errors do not invalidate an affidavit.). Accordingly, the anomalous journal entry did not deprive the respondent of jurisdiction to set the bond amount or render the order void.

**ANIMAL PROTECTIVE LEAGUE**

{¶ 18} The relator made the APL a respondent in this prohibition case. However, prohibition does not apply to the APL because it did not exercise judicial or quasi-judicial authority. The Supreme Court of Ohio has "consistently defined quasi-judicial power as 'the power to hear and determine controversies between the public and individuals that require a hearing resembling a judicial trial." *State ex rel. Miller v. Warren Cty. Bd. of Elections,* 2011-Ohio-4623, ¶ 13. In the present case, the APL is a litigant or acting as an administrative agency, not as a court or a judge. Thus, prohibition does not apply.

{¶ 19} Accordingly, this court denies the application for a writ of prohibition. Relator to pay costs. This court directs the clerk of courts to serve all parties notice of the judgment and its date of entry upon the journal as required by Civ.R. 58(B).

{¶ 20} Writ denied.

_____
DEENA R. CALABRESE, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
MICHAEL JOHN RYAN, J., CONCUR